## Commonwealth v. Wagner

*H. R. Berninger, District Attorney,* for Commonwealth.

*H. B. Smith,* for private prosecutor.

*J. Atlee Cryder,* for defendant.

KREISHER, P. J., April 3, 1956.—On October 11, 1955, prosecutor in the above captioned case lodged an information before William Mensch, a justice of the peace in Hemlock Township, this county, charging above captioned defendant with the violation of The Vehicle Code requiring the driver of a vehicle to stop in the event of an accident.

The said justice of the peace mailed a registered letter to defendant and the same was returned marked "refused". Thereupon, the justice of the peace noted on the information "refused to handle case, Wm. Mensch, J. P."

The said prosecutor on October 14, 1955, then lodged a similar information before a justice of the peace located in the Town of Bloomsburg, which is an adjoining municipality.

On March 26, 1956, the court entered into a full hearing. The testimony having been transcribed, the matter is now before the court for disposition.

The Vehicle Code of May 1, 1929, P. L. 905, art. 10, sec. 1025, as amended, 75 PS §634, subsection (d) of this act provides, inter alia, as follows:

"The driver of any vehicle . . . which is involved in an accident . . . with any . . . property which is unattended, shall immediately stop, and shall then and there either locate and notify the operator or owner of such unattended . . . property, of the name and address of the driver and owner of the vehicle involved in such accident with the unattended . . . property, or shall leave in a conspicuous place, in or

upon the unattended . . . property, a written notice, giving the name and address of the driver, and of the owner of the vehicle involved in such accident, and a statement of the circumstances thereof, and also shall, within twenty-four (24) hours, forward to the department a similar notice regardless of the amount of damage done to such unattended . . . property."

The facts of the case, as gathered from the testimony taken at the hearing, are that prosecutor was, on October 4, 1955, the owner of a registered English pointer bird dog, approximately two years old, the value of which is fixed between $175 and $300.

The owner of the dog lives along a State highway and when he returned to his home in midafternoon on the day in question, he testified the dog was tied on the regular leash at the back of his home. After listening to a ball game approximately one hour after his arrival, he was informed by a neighbor that his dog had been run over by a school bus some distance east of his home.

The prosecution called a witness 14 years of age who testified that he was sitting on his front porch when he saw two dogs playing at the side of his house, that he then saw prosecutor's dog move out upon the highway some distance in front of the school bus and the dog continued on the highway in the same direction as the bus was traveling, that the bus ran over the dog, killing it instantly, and thereafter slowed down but did not stop and continued on its journey.

Defendant testified in her behalf and admits having driven the school bus on the day in question and stated that she was hauling between 50 and 60 school children at the time of the incident. She further states that she was traveling around 25 to 30 miles per hour when she first saw the dog as it crossed over the highway in front of her bus, that thereafter the dog reached the other side of the highway, it turned around

and came back across the highway in front of her bus and she was unable to avoid hitting it. She further states that she brought her bus to a complete stop at 40 to 60 feet from where the dog was hit, that the children were jumping up and down in the bus and very noisy, that she turned off the ignition and then, believing it improper to leave the bus parked on the highway and improper to leave the school children, she continued on her journey, that after completing her trip, she endeavored to learn the ownership of the dog, and while doing so she received a telephone call from the owner who talked to her in a very rude manner. She further stated that she later reported the incident to the State police.

The above quoted act of assembly which prosecutor alleges defendant violated is penal in nature and must, therefore, be strictly construed.

Our first inquiry is to determine whether the use of the word "property" in the above quoted act of assembly was intended by the legislature to include an animal or a dog.

At common law, a dog was not considered to have any property rights and it was not the subject of larceny. However, the Legislature of Pennsylvania changed this common law rule, and the Dog Law of May 11, 1921, P. L. 522, sec. 23, 3 PS §482, now provides as follows:

"All dogs are hereby declared to be personal property and subjects of larceny. Except as provided in section twenty-two of this Act, it is unlawful for any person, except a police officer, to kill, injure, or poison, . . . any dog which bears a license tag for the current year. . . ."

Section 22 mentioned in the foregoing act gives any person the right to kill any dog which is in the act of pursuing, worrying or wounding any livestock, poultry and so forth, and also permits the killing of a li-

censed dog that enters any field or enclosure where livestock or poultry are confined.

The Penal Code, as enacted by the legislature on June 24, 1939, P. L. 872, sec. 941, makes it a crime for any person to wilfully and maliciously kill, maim or disfigure any domestic animal of another person.

It has been decided by the courts of Pennsylvania and is set forth in 2 Am. Jur. §5, page 692, that a dog is a domestic animal.

Therefore, we believe that in the ordinary and usual meaning of the words "domestic animal", a dog is considered to be included, and we, likewise, believe we are justified in concluding that a dog is now considered to be property, and it would seem to follow, since words used in a statute are to be given their usual and customary interpretation, that the legislature intended that a dog is included within the term "property" as used in the act of assembly here alleged to be violated.

The act of assembly above quoted is a mandatory act containing no exceptions and it places a duty upon the driver of a vehicle to immediately stop and perform the functions outlined in the act in the event of an accident involving unattended property.

The courts have held interpreting the act of assembly making it the duty of the motor vehicle driver to stop in the event of an accident, that a momentary stop is not sufficient to comply with the act: Commonwealth v. Bonner, 3 Lycoming 303.

It is to be noted that the legislature makes it only a summary offense and not a misdemeanor for failure to stop in the event of damage to unattended property, while it is a misdemeanor to fail to stop in the event of an accident with property attended.

The Superior Court of Pennsylvania has many times considered the duty of a motor vehicle operator as set forth in The Vehicle Code requiring the operator to

stop in the event of an accident, and it generally held that since the act of assembly is penal in nature and, therefore, must be strictly construed, the accused cannot be criminally liable under the act for failure to do something that was not necessary or reasonably required of him.

It is stated in the case of Commonwealth v. Adams, 146 Pa. Superior Ct. 601, at page 608, that "While the dictionaries give a number of meanings for the word reasonable, in a legal sense conduct is reasonable if it is consistent with that of a prudent man in like circumstances".

This quotation does not relate to the section of the act here alleged violated, but rather to subsection (*B*) of the act and relates to the term "reasonable assistance", as used therein. There is no such expression contained in subsection (*D*) above quoted. We, therefore, are confronted with a technical violation which defendant from her own testimony admits. As it will be noted from the above quoted act, it is not only the duty to immediately stop in the event of an accident with unattended property, but it is also the duty of the driver involved in an accident with unattended property to either locate the owner of the property or leave in a conspicuous place upon the unattended property a written notice giving the name and address of the driver and the owner of the vehicle involved, together with a statement of the circumstances thereto.

The defense that defendant was a school bus operator believing it to be more important to maintain the order of her children and not park her bus on a down grade on a highway than it was to leave her bus and attempt to locate the owner of the dog, seems to us to merit a worthy consideration and causes the court to realize defendant was confronted with a dilemma. We, nevertheless, feel bound under the strict wording of the statute to reluctantly find defendant guilty of a

purely technical violation of the above quoted section.

Therefore, we conclude that the word "property" as used in the above quoted act of assembly was intended by the legislature to include the domestic animal, dog. Likewise, we conclude under the terms of the statute, that it is the duty of an automobile driver running over a dog to stop immediately and attempt to locate the owner of the dog. In the event this is impossible, he shall then, in a conspicuous place, leave a written notice giving his name and address and a statement of the circumstances.

This duty imposed upon the driver of a motor vehicle in a situation is merely a duty consistent with that of a prudent person in like circumstances, as we are of the opinion that most persons would, upon hitting any domestc animal, stop and attempt to give aid to the animal if it is only injured or attempt to locate the owner if it is killed and, if unable to do so, to leave a name and address in a conspicuous place near the dog. As stated before, we think the facts related by defendant no doubt justified her action in this case, but since the legislature has not seen fit to place any exceptions or provide for any extenuating circumstances justifying the violation of the act we do not believe that the court in its interpretation of the act is permitted to write into the law any such exceptions. Therefore, without further discussion, the court enters the following

*Order*

And now, to wit, April 3, 1956, we adjudge defendant guilty and direct the district attorney to notify defendant to appear in open court for sentence on June 4, 1956, unless in the meantime defendant shall pay the costs of prosecution and a fine of $25 to the Commonwealth of Pennsylvania for use of the County of Columbia.